**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Douglas Dale,** | ) | **CASE NO. 5:09 CR 33** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **United States of America,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Respondent.** | ) | |


### INTRODUCTION

This matter is before the Court upon Petitioner's Motion to Vacate Conviction and Grant

a New Trial (Doc. 69).  Also pending are petitioner's Motion for Permission to Expand the

Record (Doc. 72) and Motion for Discovery (Doc. 81).  This is a criminal case involving

bankruptcy fraud.  For the reasons that follow, the motions are DENIED.

### FACTS

Petitioner was indicted on seven counts of fraud related to the filing of a petition in

bankruptcy.  Count one charged petitioner with filing the bankruptcy for the purpose of

executing or concealing a scheme to defraud the mother of petitioner's child out of child support

1

payments.  Petitioner was also charged with five counts of making false statements in connection with his bankruptcy proceeding, three of which relate to petitioner's interest in a business known as Canton Realty (counts two, four, and seven).  The two remaining false statement counts involve petitioner's failure to identify a judgment owed to him (count three) and his failure to reveal the child custody proceeding to the bankruptcy court (count five).  Count eight charged petitioner with concealing from his creditors his interest in Canton Realty.  The government dismissed count six and petitioner proceeded to a jury trial on the remaining counts.  At the close of the evidence, petitioner moved the Court for a judgment of acquittal, which the Court denied. Thereafter, the jury returned a verdict of guilty on all six counts.  After the verdicts, petitioner renewed his motion for a judgment of acquittal.  This Court granted petitioner's motion in part and entered judgment of acquittal with respect to count one on the ground that there was insufficient evidence to demonstrate that petitioner filed for bankruptcy *for the purpose* of executing or concealing a scheme to defraud related to the payment of child support.  The Court upheld the convictions on the remaining counts.  Thereafter, petitioner appealed his convictions to the Sixth Circuit.  There, petitioner argued that his attorney provided ineffective assistance of counsel by failing to move for a new trial after the Court granted his motion for judgment of acquittal with respect to count one.  The Sixth Circuit concluded that petitioner presented "a reasonable argument for a finding of prejudice," but that the issue is "best left to the trial judge to develop the record and to determine whether the government acted in bad faith or whether [petitioner] suffered compelling prejudice."

Petitioner now moves pursuant to 28 U.S.C. § 2255 to vacate his convictions.  Petitioner also seeks discovery to support a claim of "selective prosecution" and to expand the record.  The

government opposes the motions.

**ANALYSIS**

1.  Ineffective assistance of counsel

A petitioner challenging the effectiveness of trial counsel must show that counsel was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and further that counsel's deficient performance so prejudiced the defense as to render the trial unfair and the result unreliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Both prongs must be established in order to succeed on a claim for ineffective assistance of counsel.

Petitioner argues[1] that his attorney's failure to file a motion for a new trial after this Court granted petitioner's motion for judgment of acquittal on count one amounts to ineffective assistance of counsel.  According to petitioner, a motion for new trial would have been granted based upon the existence of "spillover" evidence.  As such, the failure to file a motion prejudiced petitioner.  In response, the government argues that a motion for a new trial would have been denied as untimely if filed after the Court granted in part petitioner's motion for judgment of acquittal.  The government also argues that the judgment of acquittal on count one would not have been granted as petitioner cannot establish that any spillover evidence caused him "compelling prejudice" or that the government acted in bad faith in asserting count one.

Assuming *arguendo* that the failure to file a motion for a new trial constituted deficient performance, the Court finds that petitioner fails to establish that he was prejudiced by counsel's failure.  In order to satisfy this prong of the *Strickland* test, petitioner must establish that he

---

[1]     The Court reviewed and considered the arguments raised in the parties' appellate briefs as well as those set forth in petitioner's §2255 motion.

suffered prejudice as a result of the failure.  To establish prejudice, petitioner must show that "counsel's alleged errors were so serious that, but for those errors, there is a reasonable probability that the outcome of the proceeding would have been different."  *United States v. Holder*, —F.3d.— 2011 WL 4011446 (6th Cir. Sept. 12, 2011).  "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'" *Id*. (*citing Strickland*, 466 U.S. at 694).

In this case, petitioner must establish that the outcome of the proceedings would have been different had his attorney filed a motion for a new trial.  Put another way, petitioner must show a reasonable probability that this Court would have granted a motion for a new trial.

As noted by the Sixth Circuit:

Claims of retroactive prejudicial misjoinder only succeed when the defendant makes a showing of compelling prejudice or the prosecutor acted in bad faith in bringing the initial...charge.  The defendant bears a very heavy burden of showing prejudicial misjoinder.  In determining whether a defendant suffered prejudice, courts consider such factors as whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case and the ability of the jury to separate evidence.

*United States v. Dale*, 2011 WL 2745968 (6th Cir. July 12, 2011)(quotations and citations omitted).

The Court finds that petitioner has not made a compelling showing of prejudice such that a new trial would have been granted based on prejudicial misjoinder.  As the government points out, much of the evidence regarding petitioner's failure to pay child support was relevant to other counts.  Count five charged petitioner with making a false declaration in a bankruptcy proceeding by failing to disclose the existence of the child support proceeding. Petitioner argues that the testimony of Kimberly Hopwood and Stephen Harrison would have been inadmissable.

4

This Court disagrees.  These witnesses' testimony regarding the existence and status of petitioner's child support case were directly relevant to count five.  In addition, the Court finds that evidence regarding petitioner's failure to pay child support and efforts to avoid these obligations is admissible to show that petitioner intentionally failed to disclose the proceedings. Although petitioner claims that it is "entirely possible" that his failure to disclose the proceeding was inadvertent, this "possibility" makes the evidence no less admissible.  Moreover, the amount and length of the outstanding debt directly weigh on the reasonableness of defendant's argument that he "inadvertently" forgot to disclose the proceeding.  Petitioner also claims that testimony regarding "how the lump sum arrearage settlement was paid" would not have been admissible. But, as the government points out, the evidence showed that petitioner paid Phyllis Canfield monies from a Canton Realty account and that those monies were ultimately used to pay petitioner's child support obligation.  Thus, the evidence goes to the issue of petitioner's control over monies belonging to Canton Realty and therefore relate to the charges involving Canton Realty.  While arguably *some* of the evidence regarding the outstanding child support may not have been admitted,[2] the Court does not find the admission of this evidence resulted in the type of "compelling prejudice" necessary to grant a new trial on the basis of spillover.  The Court rejects petitioner's argument that the spillover evidence incited or aroused the jury into erroneously believing that petitioner was a "deadbeat dad," as much of this evidence was admissible to prove other charges.  Thus, the jury would have generally known of petitioner's failure to pay child support for a number of years.

---

[2]     Petitioner points out that the government elicited testimony suggesting that defendant faked a disability to avoid employment.

5

As recognized by the Sixth Circuit, "at trial, the government's evidence focused primarily on [petitioner's] interest in Canton Realty...."  Four of the seven counts for which petitioner was convicted, involved petitioner's failure to disclose his interest in Canton Realty.  Moreover, while petitioner makes much of the fact that he believes that the disclosure of the child support proceeding and municipal court judgment were not "material," and thus should not support a conviction, petitioner nearly ignores the charge regarding Canton Realty and discusses evidence pertaining to Canton Realty in only one sentence.  The evidence on the Canton Realty charge was overwhelming.[3]   In fact, much of the evidence petitioner complains of is admissible with respect to this charge.  For example, petitioner argues that the testimony of Stephen Harrison, the attorney representing the mother of petitioner's child in connection with the child support proceedings, "spilled over" and improperly influenced the jury.   Petitioner, however, ignores the fact that much of the testimony offered by Harrison was relevant to other charges, namely petitioner's failure to identify Canton Realty in connection with his bankruptcy.  In addition to testifying about the child support proceedings in general, Harrison testified that he questioned petitioner regarding Canton Realty in the course of the child support proceedings.

---

[3]     The government introduced a wealth of evidence regarding Canton Realty.  (See, generally, Brief of Appellee, at pp. 8-12, Case No. 09-4211 (6th Cir. 2011).  For example, the government points out that Joseph Marino testified that petitioner's signature appears as "secretary/treasurer" of Canton Realty on a deed and that petitioner signed a listing agreement on behalf of Canton Realty. Petitioner's signature also appeared on tax returns.  Brad Meininger testified that Canton Realty owns real estate.  Randolph Merrick testified that Canton Realty was petitioner's company and that petitioner ran and owned it.  In addition, Phyllis Canfield testified that Canton Realty owned rental properties and that petitioner owned Canton Realty and "has a part" in Canton Realty.

According to Harrison, petitioner indicated that a trust owned Canton Realty.

Although some of the evidence surrounding petitioner's child support case or ability to work may not have been admissible absent count one, the vast majority of the evidence discussed by petitioner was admissible for other purposes.  Moreover, as the government points out, this Court instructed the jury to consider the evidence separately for each count. While the government discussed with the jury petitioner's longstanding failure to pay child support and inability to work, the Court does not find that these statements are sufficient to meet petitioner's "very heavy burden" of demonstrating that *compelling* prejudice resulted from the retroactive misjoinder of count one.  In other words, even if some prejudice occurred as a result of the admission of certain evidence and statements by the prosecutor, petitioner falls far short of establishing that any such prejudice is *compelling*.

The Court further finds that petitioner cannot demonstrate that the prosecutor acted in bad faith in that the prosecutor "had a reasonable expectation of obtaining a valid conviction, and did in fact obtain a conviction on Count 1."  *United States v. Daniels*, —F.3d.— 2011 WL 2637274 (6th Cir. Aug. 9, 2011)(quotations and citations omitted).  This Court initially denied petitioner's oral motion for acquittal, and it was not until the parties submitted briefing that the Court ultimately concluded, based in part upon statutory construction, that petitioner was entitled to a judgment of acquittal.  This, of course, occurred after the government obtained a guilty verdict on count one.  The mere fact that petitioner obtained a judgment of acquittal, in and of itself, does not imply bad faith.[4]

---

[4]     Petitioner also argues that the report of the investigation conducted
        by the Treasury Inspector General for Tax Administration
        ("TIGTA") was inaccurate and incomplete.  Petitioner claims that

For these reasons, this Court would not have granted petitioner a new trial and, as such, petitioner did not suffer prejudice as a result of any alleged ineffective assistance of counsel.

2.      Motion for discovery

Petitioner argues that he is entitled to discovery in order to assist him in establishing a "selective prosecution" claim.  According to petitioner, this issue is a "separate issue from appellate (sic) court's decision requiring the trial court to determine if the entire indictment and prosecution was brought in bad faith."  Upon review, the motion must be denied.

> "The justifications for a rigorous standard for the elements of a selective-prosecution claim ... require a correspondingly rigorous standard for discovery in aid of such a claim." *United States v. Armstrong*, 517 U.S. 456, 468 (1996).  "[A] defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam) *(citing Armstrong*, 517 U.S. at 465).

*Hubbard v. United States*, 2006 WL 1374047 (E.D. Mich. 2006).  In other words, a defendant must come forward with *some* evidence before the Court will allow discovery into selective prosecution claims.  *See, e.g.*, *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998).

------

he recently reviewed the report and that all of the information been provided to the AUSA, it "would have barred an indictment...."  In addition, petitioner argues that there was no probable cause based on the failure of the TIGTA to provide a complete and accurate report and the AUSA's refusal to assess the facts. This Court disagrees.  The issue here is whether the prosecutor acted in bad faith in bringing count one.  The Court finds that, on the facts of this case, the conviction, as well as this Court's initial denial of defendant's motion for acquittal obviates bad faith on the part of the prosecutor.  With regard to petitioner's claim for "juror bias," "credibility of witnesses," and "failure to admit certain exhibits," the Court notes that these argument were made for the first time in petitioner's reply brief.  As such, they will not be considered by this Court.

8

In this case, petitioner falls far short of demonstrating that he is entitled to discovery. Petitioner simply argues that "he believes" that count one of the indictment was "a selective prosecution based on...bias against his gender and for his exercise of his due process rights...." Petitioner goes on to ask for discovery in order to prove his case.  Based on petitioner's failure to identify any facts supporting his belief, he is not entitled to discovery.

    3.  Motion to expand the record

Petitioner asks the Court for permission to expand the record to add unidentified information he believes will show that the TGITA acted in "bad faith" by failing to conduct a thorough and accurate investigation.  According to petitioner, this information is directly relevant to establishing that the prosecutor acted in bad faith in asserting count one.  Petitioner also argues that the Sixth Circuit *sua sponte* instructed this Court to address the issue of whether the government acted in bad faith and to "develop an adequate record."  In response, the government argues that the document attached to petitioner's motion indicates that petitioner's representative was in possession of the document before the trial commenced.  According to the government, petitioner had an opportunity to present evidence contradicting the report at trial. Petitioner, although filing a reply brief, does not address this contention.

Upon review, the Court finds that petitioner's motion must be denied.  As an initial matter, the Court does not read the Sixth Circuit's opinion as requiring this Court to grant petitioner's motion simply because he raises issues relating to bad faith.  Rather, the Court finds that the Sixth Circuit simply indicated that this Court should consider *both* prongs for the spillover analysis in addressing petitioner's claim for ineffective assistance of counsel.  In his motion, petitioner generally takes issue with the TIGTA's report and indicates that he possesses

9

information that would demonstrate that the report is erroneous and incomplete.  Petitioner asks

that he be permitted to submit "documentary, material evidence," but petitioner never articulates

what information he intends to submit.  In his reply brief, petitioner disputes many of the

assertions purportedly contained in the TIGTA report.  For example, petitioner argues that the

TIGTA "failed to disclose to the AUSA that during Oct-Dec 2005, I was living out of a suitcase

and the truck of my car, as the IRS assigned me to a temporary duty station in Cincinnati, Ohio,

for 'new hire' orientation...."  According to petitioner, there would have been no issue as to

petitioner's living situation for this time period had the TIGTA disclosed this information.  At

the same time, however, petitioner points out that "Mr. Malavite in fact testified that I was out of

town in connection with my job with the government...."  Thus, many of the issues petitioner

disputes were, in fact, addressed at trial.  Yet, the jury nonetheless returned a conviction on

count one.

   Because petitioner fails to identify any of the "information" he wishes the Court to

consider, together with the fact that the government in fact obtained a conviction on count one,

the Court finds that petitioner's motion to expand the record must be denied.[5]


   4. Certificate of Appealability

28 U.S.C. § 2253(c) provides:

---

[5]   The Court finds it telling that petitioner did not appeal this Court's
denial of petitioner's motion to dismiss the indictment on the
grounds that the TIGTA acted in an ultra vires capacity in
connection with this case.  Nor did petitioner's appellate counsel
raise any issues surrounding the "bad faith" of the government in
the initial appeal.

10

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

*(B) the final order in a proceeding under section 2255.*

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

(emphasis added).

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court determined that

[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

For the reasons stated herein, the Court does not find that petitioner has made a substantial showing of the denial of a constitutional right, with the exception of petitioner's claim that he was denied effective assistance of counsel as it relates to the failure of petitioner's attorney to seek a new trial.  The Court finds that whether petitioner was prejudiced is a close call and that reasonable jurists may disagree on the resolution of the issue.  Accordingly, the Court hereby issues a certificate of appealability on this issue.  With regard to all other issues, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate Conviction and Grant a New

11

Trial (Doc. 69) is DENIED.  In addition, petitioner's Motion for Permission to Expand the

Record (Doc. 72) and Motion for Discovery (Doc. 81) are also denied.  The Court hereby

GRANTS a certificate of appealability with respect to petitioner's claim of ineffective assistance

of counsel.

        IT IS SO ORDERED.


        /s/ Patricia A. Gaughan
        PATRICIA A. GAUGHAN
        United States District Judge

Dated: 1/12/12